## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| C.R., BARD, INC., a New Jersey corporation, and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SMITHS MEDICAL ASD, INC., a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER REGARDING PLAINTIFFS' SHORT FORM DISCOVERY MOTIONS (DOC. NOS. 172, 175, 176, 177 & 190)**<br><br>Case No.  2:12-cv-00036-RJS-DAO<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard")

brought the following short form discovery motions concerning venue discovery: (1) Bard's

Short Form Motion to Compel Smiths Medical ASD, Inc.'s ("Smiths") Response to Interrogatory

No. 1 (Doc. No. 172); (2) Bard's Short Form Motion to Compel Smiths Response to

Interrogatory No. 2 (Doc. No. 175); (3) Bard's Short Form Motion to Compel Smiths Response

to Interrogatory No. 4 and to Provide a 30(b)(6) Witness for Topic 19 (Doc. No. 176); (4) Bard's

Short Form Motion to Compel Smiths Response to Interrogatory No. 5 (Doc. No. 177); and (5)

Bard's Short Form Motion to Compel Rule 30(b)(6) Testimony (Doc. No. 190).

Having considered the briefing of the parties, the court, for the reasons addressed in

detail below: (1) GRANTS IN PART and DENIES IN PART  Bard's Short Form Motion to

Compel Smiths Response to Interrogatory No. 1 ("Mot. to Compel Interrog. No. 1") (Doc. No.

172); (2) GRANTS IN PART and DENIES IN PART Bard's Short Form Motion to Compel

Smiths Response to Interrogatory No. 2 ("Mot. to Compel Interrog. No. 2") (Doc. No. 175); (3)

DENIES Bard's Short Form Motion to Compel Smiths Response to Interrogatory No. 4 and to

Provide a 30(b)(6) Witness for Topic 19 ("Mot. to Compel Interrog. No. 4") (Doc. No. 176); (4) GRANTS IN PART and DENIES IN PART Bard's Short Form Motion to Compel Smiths Response to Interrogatory No. 5 ("Mot. to Compel Interrog. No. 5") (Doc. No. 177); and (5) DENIES Bard's Short Form Motion to Compel Rule 30(b)(6) Testimony ("Mot. to Compel Rule 30(b)(6) Test.") (Doc. No. 190).

## **BACKGROUND**

Bard filed this case in January 2012 alleging Smiths infringed on two of its patents. (*See* Compl., Doc. No. 2).  In December 2012, the court stayed and administratively closed this case pending the resolution of *inter partes* reexaminations of the patents-in-suit.  (Order Granting Mot. for Stay Pending Inter Partes Reexamination, Doc. No. 97; Order Administratively Closing Case, Doc. No. 98.)  On October 4, 2019, after this process concluded, the court lifted the stay and reopened this case.  (Order Reopening Case and Setting Joint Status Conference, Doc. No. 152.)

On November 25, 2019, Smiths filed a motion to transfer the venue of this action to the District of Minnesota, arguing that venue is not proper in the District of Utah under 28 U.S.C. § 1400(b).  (Smiths Medical ASD, Inc.'s Motion to Transfer Venue, Doc. No. 157.)  Smiths' motion noted that during the time the case was stayed, the Supreme Court issued its decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), which it claims changed the law.  Specifically Smiths claimed *TC Heartland* found that the patent venue statute, 28 U.S.C. § 1400(b), controls the venue analysis for any patent infringement action, as opposed to the general venue statute, 28 U.S.C. § 1391.  (*Id.* at 1.)  In light of *TC Heartland*, Smiths argued venue is not proper in the District of Utah because Smiths did not maintain a "regular and established place of business" in Utah at the time the complaint was filed, or at any time

2

thereafter.  (*Id.* at 2.)  Accordingly, Smiths sought to transfer venue to the District of Minnesota

where it is headquartered.  (*Id.*)

Bard opposed the motion, arguing that in 2012, Smiths had a regular and established

place of business in Utah because "Smiths maintained a [storage] unit in Utah that Smiths' sale

representatives used to store product samples, marketing literature, or heavier pieces of capital

equipment" and because "two Smiths sales representatives responsible for Utah admittedly lived

in Utah, typically worked at home, occasionally placed orders for customers, visited customers in

Utah and performed demonstrations and presentations for customers using sample products."

(Opp'n to Mot. to Transfer Venue 1, Doc. No. 160 (internal quotation marks omitted).)  Bard's

motion also requested that to the extent the court is "unable to determine whether venue is proper

on the present record" that it permit venue discovery.  (*Id.* at 10.)  Bard indicated that it sought

"discovery regarding the facts underlying Smiths' use of storage units in 2012, the extent to

which Smiths' Utah-based employees worked out of their home offices in 2012 and the types of

work conducted at their home offices."  (*Id.* at 11.)  Specifically, Bard indicated that it

> seeks discovery regarding the types and extent of products and equipment that were
> stored in the storage unit, including whether the accused products were stored there,
> whether marketing materials were stored there, the types of "capital equipment"
> stored there, and whether Smiths has records regarding the storage unit.  Bard also
> seeks discovery regarding the types of supplies, samples and equipment stored in
> the Smiths' employees' homes. Bard seeks discovery regarding the timeframes in
> which Smiths maintained a storage unit in Utah and the length of time over which
> the Smiths employees worked out of their home offices. All of these facts are
> pertinent to the question of whether Smiths has a regular and established place of
> business in the District of Utah.

(*Id.*)  Bard also suggested that even if venue was not proper in 2012, it had identified evidence

showing venue "may be proper now," and that discovery would allow it to "explore" this basis

for venue further.  (*Id.* at 12.)  Bard claims that two related Smiths entities, Smiths Medical OEM

and Smiths Medical Capital, appear to have regular and established places of business in Utah

that could provide a basis for venue.  (*Id.*)  Specifically, Bard points to a spring 2019 job posting by Smiths Medical OEM advertising a job in Salt Lake City, and the fact that Smiths Medical Capital filed an application for business name registration in February 2019.  (*Id.* at 12–14.) Based on these discoveries, Bard indicated that it sought (1) "limited venue-related [discovery] regarding whether Smiths hired an OEM Account Manager who lives in Utah, and if so, discovery regarding that person's job responsibilities and role in Utah," and (2) "discovery regarding the relationship between Smiths Medical Capital and Smiths Medical ASD."  (*Id.* at 14.)  Bard asked the court to deny the motion to transfer venue, or in the alternative, transfer venue to the District of Delaware instead, where Smiths is incorporated.  (*Id.* at 1.)  At the same time Bard filed its opposition, it also filed a separate Motion for Venue Discovery (Doc. No. 161).  Specifically, Bard requested up to twenty document requests, five interrogatories, and four hours of a 30(b)(6) deposition of Smiths, all "relating to the subject matter identified in Bard's Opposition."  (*Id.*)

On March 3, 2020, the district judge issued a decision granting the Motion for Venue Discovery in part and denying without prejudice the Motion to Transfer Venue.  (Order Granting Mot. for Venue Discovery, Doc. No. 168.)  The district judge indicated that while "a close call," further development of the facts was necessary to decide Smiths' request to transfer venue:

> Although Smiths Medical has provided some information relevant to the venue analysis, a more satisfactory showing of the facts is necessary to resolve Smiths Medical's Motion.  The Federal Circuit has recognized that home offices may qualify as a defendant's regular and established place of business, and at least one court has concluded that a defendant's sales representative's home office was sufficient to establish venue.  Similarly, a defendant's use of a storage space may provide a basis for venue.  Thus, further inquiry into these subject areas is proper.

(*Id.* at 4 (footnotes omitted).)  Specifically, the district judge found that

> Bard has articulated requests for more specific information concerning the materials kept in the storage unit as well as how the sales representatives actually

4

used the unit.  Likewise, Bard seeks greater detail about the extent Smiths Medical's sales representatives worked out of their homes, the types of work conducted in their home offices, and the types of supplies, samples, and equipment stored in the employees' homes.  While any one of these facts alone may not tip the scale in favor of finding venue, this information, taken together, is relevant to whether Bard can make out a prima facie case of proper venue.

(*Id.* at 4–5 (footnotes omitted).)  Accordingly, the district judge granted Bard's request for additional venue discovery in part, permitting Bard to seek up to ten document requests, five interrogatories, and four hours of a 30(b)(6) deposition of Smiths "relating to the subject matter identified in Bard's Opposition."  (*Id.* at 5.)

## PATENT VENUE STATUTE

The patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  As the district judge pointed out in his order granting venue discovery, "there is no question that Smiths Medical does not 'reside' in Utah because it is incorporated in Delaware." (Order Granting Mot. for Venue Discovery 3 n.16, Doc. No. 168.)  Thus, "[w]hether venue is proper in this district turns on whether Smiths Medical has committed alleged acts of infringement and has a 'regular and established place of business' in Utah."  (*Id.* at 3.)  To have a "regular and established place of business" in a district, "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  "While the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' [] there must still be a physical, geographical location in the district from which the business of the defendant is carried out."  *Id.* at 1362 (quoting *In re Cordis*, 769 F.2d 733, 737 (Fed. Cir. 1985)).

**DISCUSSION**

Bard's motions challenge four of Smiths' answers to its interrogatories concerning venue (Interrogatory Nos. 1, 2, 4 and 5).  Before addressing the substance of each motion, the court addresses two threshold issues raised by these interrogatories and Smiths' objections.

*Relevant Time Period for Venue Discovery*

Bard's Interrogatory Nos. 1, 2, 4, and 5 all seek information from "January 2012 to the present."  (Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 2, 5, 8 & 11, Doc. No. 174-1.)  Bard's motions to compel do not specifically address the time period at issue in its interrogatories—or attempt to argue that such an expansive time period is relevant to determining venue in a patent case—but it does seek to compel complete responses to each of the interrogatories.  (Mot. to Compel Interrog. No. 1, Doc. No. 172; Mot. to Compel Interrog. No. 2, Doc. No. 175; Mot. to Compel Interrog. No. 4, Doc. No. 176; Mot. to Compel Interrog. No. 5, Doc. No. 177.)  Smiths objected to each of Bard's interrogatories to the extent they sought "information beyond 2012" (1) because the district judge's order granting venue discovery limited Bard to the subject matter identified in its opposition to the motion to transfer venue, where Smiths claims Bard requested only information pertaining to Smiths' use of storage units in 2012 and the extent to which Utah-based employees worked out of home offices in 2012, and (2) because the time period after 2012 is "not relevant to the venue analysis" as venue is determined at the time a complaint is filed.  (Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 3, 6, 9 & 11–12, Doc. No. 174-1.)

Smiths' first ground for objecting to discovery beyond 2012 is not entirely accurate. While Bard indicated in its opposition that it sought "discovery regarding the facts underlying Smiths' use of storage units in 2012, the extent to which Smiths' Utah-based employees worked

out of their home offices in 2012 and the types of work conducted at their home offices," (Opp'n to Mot. to Transfer Venue 11, Doc. No. 160), Bard also stated that it has identified evidence indicating that venue may be proper now, if not in 2012, and that discovery would allow it to "explore" this basis for venue further.  (*Id.* at 12.)  Bard specifically indicated that it sought (1) "limited venue-related [discovery] regarding whether Smiths hired an OEM Account Manager who lives in Utah, and if so, discovery regarding that person's job responsibilities and role in Utah," and (2) "discovery regarding the relationship between Smiths Medical Capital and Smiths Medical ASD."  (*Id.* at 14.)  Thus, the discovery Bard indicated that it needed in its opposition to the motion to transfer venue is not as limited as Smiths claims.  On the other hand, the discovery Bard indicated in its opposition that it needs is certainly not as expansive as the timeframe set forth in its interrogatories.

In any event, Smiths' second ground for objecting to the discovery beyond 2012, in the context of the interrogatories posed, is well-taken.  Courts examining the relevant time period for determining venue under § 1400(b) have reached different conclusions.  A number of courts have concluded that venue is determined under § 1400(b) by examining the pertinent facts at the time the complaint is filed.  *See*, *e.g.*, *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017) (concluding that "venue is determined under § 1400(b) by the facts and situation as of the date suit is filed"); *Omega Patents, LLC v. Calamp Corp.*, No. 6:13-cv-1950-Orl-40DCI, 2017 U.S. Dist. LEXIS 186645, at *6 (M.D. Fla. Sep. 22, 2017) (unpublished) (stating that "venue must be determined at the time the action is filed and not at some future date in the proceedings"); *Rensselaer Polytechnic Inst. v. Amazon*, No. 1:18-cv-00549 (BKS/CFH), 2019 U.S. Dist. LEXIS 136436, at *28–29 (N.D.N.Y. Aug. 7, 2019) (unpublished) (indicating that venue in a patent case is determined at the time the case is filed).  Other courts have held

that venue should be determined at the time the cause of action accrues. *See Welch Sci. Co. v. Human Eng'g Inst., Inc.*, 416 F.2d 32, 35 (7th Cir. 1969) (indicating that venue should be examined "at the time the cause of action accrues and a reasonable time thereafter"); *ParkerVision, Inc. v. Apple Inc.*, No. 3:15-cv-1477-J-39JRK, 2018 U.S. Dist. LEXIS 225131, at *22–25 (M.D. Fla. Jan. 9, 2018) (unpublished), *R&R adopted*, No. 3:15-cv-1477-J-39JRK, 2018 U.S. Dist. LEXIS 225126 (M.D. Fla. Mar. 8, 2018) (unpublished) (concluding that venue should be determined at the time the cause of action accrues, and finding venue appropriate in district where the defendant had a regular place of business prior to the time the complaint was filed and the plaintiff filed the complaint "within a reasonable time thereafter").

In its opposition to the motion to transfer venue, Bard cited a case from the Northern District of Illinois to argue that patent infringement is a continuing tort and that "to the extent Smiths currently has a regular and established place of business in Utah, venue is proper." (Opp'n to Mot. to Transfer Venue 12, Doc. No. 160 (citing *Motorola Solutions, Inc. v. Hytera Commc'ns Corp. Ltd.*, 402 F. Supp. 3d 450 (N.D. Ill. 2019)).  Bard then proceeded to identify limited discovery—relating to one job posting in 2019 by Smiths Medical OEM and the relationship between Smiths and Smiths Medical Capital—it needs to determine if Smiths currently has a regular and established place of business in Utah.  (*Id.* at 14.)

Courts examining the relevant time period for venue typically look at the time preceding the filing of the complaint, as opposed to the time following the filing of the complaint, to see if the complaint was filed within a "reasonable time" after the cause of action accrued.  *See ParkerVision, Inc.*, 2018 U.S. Dist. LEXIS 225131, at *20–25 (finding venue proper in district "under the unique facts presented" where plaintiff filed case on December 14, 2015 and defendant had at least one office in district until November 2015).  However, in *Motorola*

*Solutions*, the court examined facts that arose both before and after the filing of the complaint to determine whether venue was proper in that district.  In that case, the defendants signed a lease on March 5, 2017, prior to the filing of the complaint on March 14, 2017, but did not occupy the facility until April 1, 2017 or finish setting up the facility until August 2017.  *See* 402 F. Supp. 3d at 455.  The court found venue in the district appropriate in that case given defendants' concession that the facility could operate as a regular and established place of business as of August 2017.  *Id.* at 456.

Even if venue is not determined solely at the time a complaint is filed, Bard did not cite to any cases in which a court based its venue determination on facts that occurred years after the complaint was filed, as it suggests may be appropriate here.  Moreover, Bard did not claim in its opposition to the motion to transfer venue or its motions to compel that discovery concerning Smiths employees' home offices or Smiths' storage units in Utah beyond 2012 was either needed in this case or relevant to the determination of venue.  (*See* Opp'n to Mot. to Transfer Venue 11, Doc. No. 160 (indicating that it "seeks discovery regarding the facts underlying Smiths' use of storage units in 2012, the extent to which Smiths' Utah-based employees worked out of their home offices in 2012 and the types of work conducted at their home offices")).  Interrogatory Nos. 1, 3, 4, and 5 seek information concerning Smiths employees and sales representatives in Utah, as well as Smiths storage units in Utah.  (*See* Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 2, 5, 8 & 11, Doc. No. 174-1.)  None of these interrogatories seek information concerning the 2019 job posting by a potentially related Smiths entity or the relationship between Smiths and another potentially related entity in 2019.  Further, the case law concerning the timing of the venue determination does not support Bard's requests for information on these topics beyond 2012, and certainly not for an eight year period after 2012.

While targeted discovery on the unique post-2012 facts that Bard raised in its opposition concerning the potentially related Smiths entities arguably may be warranted under the case law, Bard appears not to have directed any of its interrogatories at these topics and the interrogatory answers Bard seeks to compel do not touch upon these issues.

For these reasons, the court finds that the venue discovery Bard seeks from 2013 through the present in Interrogatory Nos. 1, 2, 4 and 5 is neither relevant nor proportional to the needs of the case, and it would impose an undue burden on Smiths to provide such information. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, the court concludes 2012 is the relevant time period for venue discovery as to the interrogatories at issue.

*Interrogatory Discrete Subparts*

Smiths objected to Interrogatory Nos. 1 and 2 on the grounds that they contain multiple discrete subparts, and declined to answer any part of those interrogatories beyond the first subpart. (Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 2–3, 5–6, Doc. No. 174-1.) Bard argues in its motion to compel concerning Interrogatory No. 1 that it constitutes a single interrogatory because all of the subparts are related to a single theme. (Mot. to Compel Interrog. No. 1 at 2, Doc. No. 172.) However, Bard but does not directly address the issue in its motion to compel concerning Interrogatory No. 2 because Smiths apparently provided at least some type of response to the second subpart of that interrogatory. (Mot. to Compel Interrog. No. 2 at 1 n.2, Doc. No. 175.) In response, Smiths continues to maintain, as it did in its objections, that Interrogatory No. 1 consists of four discrete interrogatories, Interrogatory No. 2 consists of two discrete interrogatories, and that Bard should not be permitted to "evade" the five interrogatory limit set by the district judge. (Opp'n to Mot. to Compel Interrog. No. 1 at 1–2, Doc. No. 181; Opp'n to Mot. to Compel Interrog. No. 2 at 2, Doc. No. 186.)

Having considered these arguments in the context of the district judge's order granting venue discovery, the court declines to decide the motions to compel based on the counting of interrogatories and subparts.  The district judge granted additional venue discovery because he found it necessary to resolve whether venue was appropriate in this district.  (*See* Order Granting Mot. for Venue Discovery 4, Doc. No. 168 ("Although Smiths Medical has provided some information relevant to the venue analysis, a more satisfactory showing of the facts is necessary to resolve Smiths Medical's Motion.")).  Thus, the court will consider whether the discovery sought in each interrogatory is relevant to resolution of the venue issue and proportional to the needs of the case, but will not arbitrarily limit discovery because of a technical counting of interrogatory subparts.  The purpose of the additional venue discovery is to allow the district judge to reach an informed conclusion concerning the appropriate venue for this case, and the interrogatories are designed to advance this purpose.

Further, the court notes that the manner in which Smiths responded to the interrogatories was improper.  After objecting to the interrogatories on the grounds that they contain multiple discrete interrogatories, Smiths elected to answer only what it deemed to be the first subpart of each interrogatory as opposed to answering them in numerical order until, in its view, the number of interrogatories was exhausted.  *See* 7 Moore's Federal Practice - Civil § 33.30 (indicating that it is "improper" for a party to "select[] the interrogatories of its choosing to answer" when objecting to the number of interrogatories, and that "the better rule is to require the responding party to answer the . . . interrogatories [in numerical order], and object to the remainder").  In taking this approach, Smiths selectively and improperly chose what information to disclose in response to the interrogatories.  *See Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104 (W.D.N.C. 1993) (noting that it is improper for a "responding party

[to] selectively respond to the interrogatories" when objecting on numerical grounds because this allows a responding party to "strategically omit the most prejudicial information"). Some courts have concluded that where parties selectively answer some interrogatories while simultaneously objecting that the interrogatories exceed the numerical limit, those parties waive their objections concerning numerical limit. *See Allahverdi v. Regents of the Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived [their] objection" that the plaintiff exceeded the permitted number of interrogatories.); *Paananen v. Cellco P'ship*, No. C08-1042 RSM, 2009 U.S. Dist. LEXIS 98997, at *12 (W.D. Wash. Oct. 8, 2009) (unpublished) (finding that where a party answers portions of interrogatories that it claims exceed the allotted number, "the numerosity objection is waived as to those interrogatories that were answered").

For these reasons, the court will not engage in an analysis of the number of interrogatories served by Bard, and will proceed to consider whether the information sought in each interrogatory is relevant to the resolution of the venue issue and proportional to the needs to the case.

1. **Bard's Short Form Motion to Compel Smiths Response to Interrogatory No. 1 (Doc. No. 172)**

Bard asks the court to compel Smiths to provide a complete answer to its Interrogatory No. 1:

> From January 2012 to the present, identify all Smiths employees or agents, including but not limited to Utah Employees, that have lived or worked in Utah during their employment or agency for Smiths, and for each person, provide the Utah address(es) or location(s) at which they resided or worked, describe the nature of their work or agency in Utah, including any demonstrations, tutorials, educational programs, sales calls, or meetings that the person attended, participated in, or was involved with in Utah, describe any sales placed by, facilitated by, or

attributable to each person in Utah, and describe the physical location(s) where they store, keep, or maintain any Smiths' products, inventory, samples, supplies, promotional material, literature or equipment.

(Mot. to Compel Interrog. No. 1, Doc. No. 172; *see also* Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 2, Doc. No. 174-1.)  After interposing various objections, Smiths responded to this interrogatory by providing the names and other information for two Smiths employees—Claudia Campbell and Mike Franson—who "resided in Utah in 2012 and performed a portion of their work in Utah during 2012," and by providing the names and business units of other Smiths employees who "did not reside in Utah in 2012 but were sales representatives covering Utah for at least a portion of 2012."  (Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 2–5, Doc. No. 174-1.)  Smiths also identified certain documents from which the information sought could be ascertained pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.  (*Id.* at 4.)

Bard states that while Smiths provided certain information responsive to a portion of this interrogatory, it "refuses to provide information regarding sales placed in Utah and physical locations where materials were stored."  (Mot. to Compel Interrog. No. 1 at 1, Doc. No. 172.)  Bard claims that "[t]he extent to which Smiths' sales representatives placed sales from their Utah home offices is relevant to venue," and that "[l]ocations where Smiths' sales representatives store materials in Utah is also relevant to venue."  (*Id.*)  Smiths does not respond directly to these arguments in its opposition, instead arguing that Bard's interrogatory contains multiple discrete subparts and that the motion "should also be denied because Smiths has provided the information Bard seeks."  (Opp'n to Mot. to Compel Interrog. No. 1 at 1–2, Doc. No. 181.)

The court GRANTS IN PART and DENIES IN PART Bard's motion to compel Smiths to respond to Interrogatory No. 1.  The court finds the information Bard seeks in this

interrogatory relevant to venue insofar as it seeks information concerning Smiths employees who resided in Utah in 2012 and presumably worked out of their homes.  Bard's interrogatory largely seeks information the district judge found relevant to determining venue.  (*See* Order Granting Mot. for Venue Discovery 4–5, Doc. No. 168 ("Bard seeks greater detail about the extent Smiths Medical's sales representatives worked out of their homes, the types of work conducted in their home offices, and the types of supplies, samples, and equipment stored in the employees' homes . . . . While any one of these facts alone may not tip the scale in favor of finding venue, this information, taken together, is relevant to whether Bard can make out a prima facie case of proper venue.")).

Moreover, case law supports discovery concerning the specific information requested in the interrogatory.  In *RegenLab USA, LLC v. Estar Technologies Ltd.*, the court concluded one of the defendants, a Texas entity, had a regular and established place of business in New York because two employees residing in New York conducted business out of their New York home offices.  335 F. Supp. 3d 526, 549–52 (S.D.N.Y. 2018).  In finding that the employees conducted business out of their New York home offices, the court noted, among other things, that the sales representatives contacted prospective customers at those prospective customers' offices in New York and took initial sales orders, and that after the products were shipped from Texas, the representatives conducted demonstrations at the customers' locations in New York.  *Id.* at 550– 51.  Likewise, in *In re Cordis*, the Federal Circuit upheld the district court's denial of the defendant's motion to dismiss the action, filed in the District of Minnesota, for improper venue. 769 F.2d at 737.  The district court determined that the defendant maintained a regular and established place of business in Minnesota because, among other things, two sales representatives based in Minnesota maintained home offices there, stored the defendant's

"literature, documents and products" in their homes, and made sales calls and gave demonstrations in Minnesota. *Id.* at 735–36.

Addressing a similar issue in *In re Cray Inc.*, the Federal Circuit concluded the defendant did not have a regular and established place of business in the Eastern District of Texas even though it allowed two employees to work remotely from that location. 871 F.3d at 1364–66. In reaching this conclusion, the court noted that, among other things, neither employee "stored inventory or conducted demonstrations" at their homes. *Id.* at 1365. The court also found it significant that while the defendant had customers in the district, no evidence was presented that either of the employees living there "served" those customers. *Id.*

The district judge's order granting venue discovery and the relevant case law demonstrate that much of the information sought in Interrogatory No. 1 is relevant to determining whether venue is appropriate in the District of Utah. In particular, the work that Utah-based Smiths employees performed in the state, including whether they serviced any Utah customers, made sales calls or conducted demonstrations in this district, placed or facilitated sales in this district, or stored any Smiths' products or literature in their Utah homes is relevant to determining whether Smiths maintained a regular and established place of business in the District of Utah through its employees' homes. However, the court limits the scope of this interrogatory to 2012, for the reasons addressed above, and to those employees who resided in Utah at that time since those are the only employees who could have been conducting business out of their homes in Utah. Indeed, the cases cited above address only the circumstances of those employees who resided in the districts from which the defendants sought to transfer venue, not those of employees who may have sporadically conducted some activities within those districts. This focus is unsurprising given that the venue determination in those cases turned on whether the

homes of employees who resided in that district constituted regular and established places of business of the defendants. *See*, *e.g.*, *In re Cray Inc.*, 871 F.3d at 1364 ("The parties' primary dispute concerns whether [an employee's] home, located in the Eastern District of Texas, constitutes 'a regular and established place of business' of [defendant]."). With these limitations, the court finds the information requested in Interrogatory No. 1 is proportional to the needs of this case, and in particular, to determining whether venue in this district is appropriate.

Further, despite Smiths' argument to the contrary, the information sought in this interrogatory has not been provided previously. For example, the declaration Smiths cites was submitted before the district judge's order finding that additional facts were necessary to resolve the venue issue, and the paragraphs cited do not specifically address the activities of either of the two Utah-based employees in 2012. (*See* Decl. of Robert DeLeon, ¶¶ 11, 12, 15, Doc. No. 157-1.) Additionally, the interrogatory responses Smiths cites do not address whether these two employees stored Smiths' products and literature in their homes, nor do they detail the specific activities those employees undertook in Utah apart from a general description of their job duties. (*See* Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 3–4, 10–11, 12, Doc. No. 174-1.)

Therefore, the court ORDERS Smiths to supplement its response to Interrogatory No. 1, as outlined above, within fourteen (14) days of the date of this order.

### 2. Bard's Short Form Motion to Compel Smiths Response to Interrogatory No. 2 (Doc. No. 175)

Bard also asks the court to compel Smiths to provide a complete response to Interrogatory No. 2:

> From January 2012 to the present, describe in detail Smiths' policies, procedures, and practices regarding expense reimbursement and provision of support, goods, or services to any Smiths employee or agent in Utah, including but not limited to Utah

16

> Employees, including, for example, all products, samples, inventory, supplies, literature, promotional material, training material, educational material, business cards, home office, vehicles, mileage, and electronic or communication devices, and describe all instances in which Smiths has reimbursed expenses or provided any of the above materials to any employee or agent in Utah.

(Mot. to Compel Interrog. No. 2, Doc. No. 175; *see also* Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 5, Doc. No. 174-1.)  Aside from its discrete subpart and timeframe objections, Smiths objected to the interrogatory to the extent it sought information concerning any employees or agents who were not based in Utah.  (Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 5–6, Doc. No. 174-1.)  Smiths then went on to identify certain documents from which the information sought could be ascertained pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.  (*Id.* at 6.)

In its motion to compel, Bard argues that "the materials Smiths provided to its sales representatives, in what quantities and when is highly relevant to venue," and that such information "is also relevant to Smiths' expectations for how its sales representatives will use and store the materials it provides."  (Mot. to Compel Interrog. No. 2 at 1–2, Doc. No. 175.)  Smiths responds that it already provided information concerning "what sales representatives carry in their vehicles and bags," but that Bard has not shown the relevance of its request for the "quantity of material and timing for receipt of material by sales representatives."  (Opp'n to Mot. to Compel Interrog. No. 2 at 1, Doc. No. 186.)  Citing to a declaration submitted with its original motion to transfer venue and its response to another interrogatory, Smiths also contends it has already provided sufficient information concerning the storage of products and promotional materials.  (*Id.* at 1–2.)

The court GRANTS IN PART and DENIES IN PART Bard's motion to compel Smiths to respond to Interrogatory No. 2.  The court finds the information Bard seeks in this

17

interrogatory relevant to venue insofar as it seeks information concerning Smiths employees who resided in Utah in 2012 and presumably worked out of their homes.  The court does not find the requested information relevant as it relates to any other Smiths sales representatives and finds Bard's arguments concerning the relevance of such information as to those representatives lack merit.

In *RegenLab*, the case Bard cites in its motion, the court, in determining whether the homes of its New York-based employees constituted a regular and established place of business of the defendant, considered whether the defendant contributed to or paid for these workplaces, whether it reimbursed the employees for certain expenses, whether such reimbursements were conditioned on the employees living in a certain area, and whether the defendant provided any secretarial or other support services in New York.  335 F. Supp. 3d at 551–52.  The court also examined the products and literature that those employees received from the defendant, and the manner in which the employees used their sales kits and the "products stored in their home office."  *Id.* at 552.  Similarly, in deciding whether the homes of its Texas-based employees constituted a regular and established place of business of the defendant, the court in *In re Cray* considered whether the defendant paid for the employees' homes, whether expenses were reimbursed, whether the reimbursement of expenses was conditioned on the employees' location, and whether support services were provided in the district and conditioned on the employees' location.  871 F.3d at 1364–65.  The court also noted that the employees did not store inventory in their homes.  *Id.* at 1365.  Further, in finding that sales representatives' homes in Minnesota constituted a regular and established place of business of the defendant, the district court in *In re Cordis* cited, among other things, the fact that the defendant engaged secretarial services in Minnesota to receive messages, provide typing services, mail literature, and receive shipments of

literature, and either paid for those services or reimbursed the sales representatives for any payments they made.  769 F.2d at 735–36.

As these cases make clear, the information sought in Interrogatory No. 2 is relevant to determining whether the homes of Smiths' Utah-based employees constituted a regular and established place of business of Smiths in this district.  Smiths' reimbursement of expenses to these employees, its provision of support to these employees, and the products and inventory provided to these employees are all relevant to determining this issue.  However, the court limits the scope of the interrogatory to 2012, for the reasons addressed above, and to employees who resided in Utah at that time, since those are the only employees who could have been conducting business out of homes in Utah.  With these limitations, the court finds that the information requested is proportional to the needs of this case, and in particular, to determining whether venue in this district is appropriate.

Further, the court rejects Smiths' argument that it has already provided the information sought through this interrogatory.  Smiths relies primarily on a declaration that it submitted prior to the district judge's ruling that additional discovery is necessary to determine the appropriate venue of this case.  (Opp'n to Mot. to Compel Interrog. No. 2 at 1–2, Doc. No. 186.)  Had such information been sufficient to make this determination, the district judge would not have ordered further discovery regarding venue.  Moreover, the cited portions of the declaration do not contain any specifics concerning Smiths' two Utah-based employees in 2012.  (*See* Decl. of Robert DeLeon, ¶¶ 10, 12, 15, Doc. No. 157-1.)  Additionally, the interrogatory response Smiths cites refers to a storage unit in Utah, which is unrelated to the information sought in this interrogatory. (*See* Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 12, Doc. No. 174-1.)

19

Accordingly, the court ORDERS Smiths to supplement its response to Interrogatory No.

2, as outlined above, within fourteen (14) days of the date of this order.

**3. Bard's Short Form Motion to Compel Smiths Response to Interrogatory No. 4 and to Provide a 30(b)(6) Witness for Topic 19 (Doc. No. 176)**

Bard also asks the court to compel Smiths to provide a complete response to

Interrogatory No. 4:

> For the period of January 2012 to the present, describe in detail any activity by any Smiths sales representative that took place in Utah, including but not limited to each demonstration, sales call, meeting, training, tutorial, trade show, or educational program that occurred in Utah, and the extent to which any such events involve use of products, samples, inventory, equipment, supplies, promotional material, or literature.

(Mot. to Compel Interrog. No. 4, Doc. No. 176; *see also* Smiths Medical ASD, Inc.'s First Suppl.

Responses to Pls.' Interrogs. 8, Doc. No. 174-1.)  Bard further asks the court to require Smiths to

designate a witness to testify on Topic 19 of its notice of rule 30(b)(6) deposition, which seeks

similar testimony:

> From January 2012 to the present, activities by any Smiths sales representative that took place in Utah and the locations where such activities took place, including demonstrations, sales calls, meetings, trainings, tutorials, trade shows, or educational programs that occurred in Utah, and the extent to which any such events involve use of products, samples, inventory, equipment, supplies, promotional material, or literature.

(Mot. to Compel Interrog. No. 4, Doc. No. 176; *see also* Smiths Medical ASD, Inc.'s Objections

and Responses to Pls.' Notice of 30(b)(6) Dep. 26, Doc. No. 176-1.)

Aside from its discrete subpart and timeframe objections, Smiths objected to the

interrogatory to the extent it sought information concerning "any activity" by a Smiths sales

representative in Utah, claiming such a request is "overly broad, unduly burdensome, and beyond

the scope of venue related discovery at issue in this case."  (Smiths Medical ASD, Inc.'s First

Suppl. Responses to Pls.' Interrogs. 8–9, Doc. No. 174-1.)  Smiths then proceeded to answer the

interrogatory as to its two Utah-based employees in 2012, Ms. Campbell and Mr. Franson, primarily describing the general job duties for individuals holding their positions.  (*Id.* at 9–11.)  Smiths also identified certain documents from which the information sought could be ascertained pursuant to Rule 33(d).  (*Id.* at 11.)  As to the 30(b)(6) notice, after interposing various objections, Smiths indicated that it would "provide a witness to testify about this Topic for the activities in 2012 performed in home offices or Utah-based storage facilities by Smiths Medical's employees or agents who resided in or serviced Utah as a sales representative in the 2012 time frame."  (Smiths Medical ASD, Inc.'s Objections and Responses to Pls.' Notice of 30(b)(6) Dep. 26–27, Doc. No. 176-1.)

In its motion, Bard states that Smiths has suggested that items stored in Smiths' Utah storage unit were used in customer presentations and demonstrations, but "refuses to provide details regarding those presentations, including whether they are meant to provide instruction regarding products that have been purchased, and how frequently or routinely such presentations occur."  (Mot. to Compel Interrog. No. 4 at 1, Doc. No. 176.)  Citing *RegenLab*, 335 F. Supp. 3d at 552, Bard claims that such "information is highly relevant to venue."  (*Id.*)  Smiths responds that it has already indicated that stored materials were used by sales representatives and provided information and documentation showing that its sales representatives conducted demonstrations.  (Opp'n to Mot. to Compel Interrog. No. 4 at 1–2, Doc. No. 183.).  Smiths claims that further details concerning "whether presentations were meant to provide instruction regarding purchased products and how frequently such presentations occurred" are "not relevant to venue, which in patent cases turns on whether Smiths had a regular and established place of business in Utah in 2012."  (*Id.* at 1.)  Smiths further argues that Bard's reliance on *RegenLab* is misplaced because

all of the defendant's employees in that case "worked from home offices making homes the place of business of the company," which is not the case with Smiths. (*Id.*)

The court finds the information requested in Interrogatory No. 4 and Topic 19 is not relevant to determining whether venue in this district is proper, and accordingly, DENIES Bard's motion to compel. As set forth in *RegenLab*, 335 F. Supp. 3d at 551–52, and *In re Cray*, 871 F.3d at 1364–65, the relevant inquiry the court must undertake to determine whether venue is proper in a particular district involving the use of home offices is to examine whether an employee's home in that district constitutes a regular and established place of business of the defendant. As addressed above, facts bearing on that inquiry, including activities undertaken in the district by employees with a home in the district, are relevant to this determination. However, facts concerning sales representatives who did not maintain homes in the district are not relevant to determining whether employees' homes in the district constitute a regular and established place of business of the defendant. *See In re Cray Inc.*, 871 F.3d at 1362 (indicating that "there must [] be a physical, geographical location in the district from which the business of the defendant is carried out").

Further, the court notes that it has already ordered Smiths to supplement its response to Interrogatory No. 1 concerning the activities of Smiths' two Utah-based employees in this district in 2012, including any demonstrations or sales calls they made and their use of Smiths' products and literature, since this information is relevant to whether their homes constituted a regular and established place of business for Smiths in Utah at that time.

### 4. Bard's Short Form Motion to Compel Smiths Response to Interrogatory No. 5 (Doc. No. 177)

Bard also asks the court to compel Smiths to provide a complete response to Interrogatory No. 5:

> Describe in detail, from January 2012 to the present, the facts and circumstances surrounding Smiths sales representatives' use of any storage unit(s) in Utah, including, for example, how many sales representatives used storage units, how many storage units were used by Smiths' sales representatives in Utah, the process through which the units were selected, purchased, leased, or rented, any agreements surrounding the unit, who paid for the unit, and whether such payments were reimbursed, what the sales representatives stored in the storage units, and how frequently they were used and accessed.

(Mot. to Compel Interrog. No. 5, Doc. No. 177; *see also* Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 11, Doc. No. 174-1.)  After objecting to the timeframe of the interrogatory, Smiths provided a response indicating that in 2012, the sales representatives whose territory included Utah had shared access to a self-storage unit in Murray, Utah.  (Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 11–12, Doc. No. 174-1.)  Smiths further indicates that in 2012, the storage unit was used to store supplies such as product samples, marketing literature, and heavier capital equipment, which would be transported and used during customer presentations.  (*Id.* at 12.)  The response also indicates that some sales representatives only visited the storage unit one time and that Smiths' employees "did not conduct or transact business at such storage facility and did not store product inventory there or distribute products from there."  (*Id.*)  Smiths also identifies the individuals who leased the unit, and indicates that the cost of the lease was reimbursed.  (*Id.*)

Bard claims that Smiths did not provide a full response to this interrogatory.  (Mot. to Compel Interrog. No. 5 at 1, Doc. No. 177.)  Specifically, Bard claims that Smiths did not identify how many sales representatives used the storage unit or indicate how frequently sales representatives used and accessed the storage unit.  (*Id.* at 1–2.)  Bard claims that

> [t]he number of Smiths sales representatives who used the storage unit and the frequency and regularity with which it was accessed are both relevant to whether there was a "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business" at the storage unit as required for venue.  *See In re Google LLC,* 949 F.3d 1338, 1345 (Fed. Cir. 2020).

(*Id.* at 1.)  Smiths responds that Bard does not explain how its answer to this interrogatory is incomplete and that it "fails to explain the relevance to venue of a catalogue of visits by individual sales representatives to the storage unit."  (Opp'n to Mot. to Compel Interrog. No. 5 at 1, Doc. No. 182.)  Smiths claims that "whether there was one visit or 100 visits, the frequency of visits and identification of who made the visits does not affect that the storage unit was not a location of Smiths sufficient to satisfy the regular and established place of business prong of the venue analysis."  (*Id.*)

The court GRANTS IN PART and DENIES IN PART Bard's motion to compel Smiths to respond to Interrogatory No. 5.  While Smiths largely answered the interrogatory, Bard correctly points out that Smiths did not identify how many sales representatives used the storage unit or indicate how frequently sales representatives used and accessed the storage unit.  Smiths' response indicates that "some sales representatives only visited the storage unit once" and states that Smiths' employees "did not conduct or transact business at such storage facility and did not store product inventory there or distribute products from there."  (Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 12, Doc. No. 174-1.)  Smiths statement that its employees did not conduct or transact business at the storage facility is conclusory, and the fact that some sales representatives visited the storage unit only once does not indicate the frequency with which other sales representatives visited the unit.

In analyzing the three factors necessary for a court to find that a defendant has a regular and established place of business in a district, the Federal Circuit in *In re Google* held that "a 'place of business' generally requires an employee or agent of the defendant to be conducting business at that place."  949 F.3d 1338, 1344 (Fed. Cir. 2020).  Specifically, the court concluded that "a 'regular and established place of business' requires the regular, physical presence of an

employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  *Id.* at 1345.

The number of Smiths employees who accessed the storage unit and the frequency with which they accessed it informs whether there was a regular, physical presence of a Smiths employee or employees at the storage unit conducting business on Smiths' behalf.  Further, the court notes that Bard's interrogatory does not ask Smiths to identify the sales representatives who visited the storage unit or request a "catalogue" of their visits as Smiths claims.  Bard simply asks Smiths to indicate "how many sales representatives used storage unit[]," and "how frequently [the storage unit was] used and accessed."  (*See* Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 11, Doc. No. 174-1.).  This information is relevant to determining whether the storage unit constituted a regular and established place of business of Smiths in this district.  However, for the reasons addressed above, the court limits the scope of the interrogatory to 2012.  With this limitation, the court finds that the information Bard seeks is proportional to the needs of this case and, in particular, to determining whether venue in this district is appropriate.  Accordingly, the court ORDERS Smiths to supplement its response to Interrogatory No. 5, as outlined above, within fourteen (14) days of the date of this order.

### 5. Bard's Short Form Motion to Compel Rule 30(b)(6) Testimony (Doc. No. 190)

Bard's motion to compel seeks an order from the court requiring Smiths to produce a 30(b)(6) witness for a thirty-minute deposition to testify concerning "Smiths' knowledge regarding what 'heavy capital equipment' was housed in the storage unit in 2012."  (Mot. to Compel Rule 30(b)(6) Test. at 2, Doc. No. 190.)  Bard claims that Smiths' designated 30(b)(6) witness, Robert DeLeon, was only prepared to testify as to this issue based on his personal recollection, but not based on the investigation that Smiths conducted in connection with this

litigation where Smiths spoke to former sales representatives. (*Id.* at 1–2.) Bard claims that as Smiths' 30(b)(6) designee, Mr. DeLeon "should have been prepared to testify not just about his personal recollection but about any and all information available to Smiths regarding what 'heavy capital equipment' was stored in the storage unit, including the recollection of Smiths' sales force." (*Id.* at 2.) Smiths responds that it provided all information concerning the contents of the storage unit, obtained from Mr. DeLeon's first-hand experience from shutting down the storage unit and the information collected through Smiths' investigation, in both its response to Interrogatory No. 5 and in Mr. DeLeon's deposition. (Opp'n to Mot. to Compel Rule 30(b)(6) Test. at 1, Doc. No. 199.) Smiths argues that "[t]he identity of the individuals is irrelevant and [Mr.] DeLeon's inability to tie specific information to particular individuals does not mean he was not prepared." (*Id.*) Further, Smiths claims that Bard's motion "fails to articulate any basis for needing more detail," and that "more specific identification is irrelevant to whether the storage unit is a regular and established place of business of Smiths." (*Id.* at 1–2.)

Having reviewed the portions of the 30(b)(6) deposition transcript provided by the parties, the court finds that Mr. DeLeon was adequately prepared to testify concerning the contents of the storage unit in 2012 and did provide testimony on that topic. When asked what he did to prepare to testify "as to what exactly was kept in the storage unit in Murray, Utah, in 2012," Mr. DeLeon indicated that he "reviewed the information that was gathered by the company, and it seemed very consistent with my recollection . . ." (6/4/20 30(b)(6) Dep. Tr. 154:22-155:9, Doc. No. 199-1.) Given that Mr. DeLeon reviewed materials gathered by Smiths—presumably part of the investigation the parties reference—his testimony concerning the contents of the storage unit was not based solely on personal knowledge. Moreover, Mr. DeLeon provided testimony concerning the storage unit and the contents of the unit. (*Id.* at

20:19-24:5, 89:20-96:5, 150:23-155:9.)  He did not refuse to answer any questions or respond

that he did not know the answer.  Instead, he made good faith efforts to respond to the questions

posed.  The court also notes, that in addition to Mr. DeLeon's 30(b)(6) testimony, Smiths

provided a substantive response to Interrogatory No. 5 concerning the materials kept in the

storage unit:

> In 2012, the storage unit was used to store supplies such as product samples,
> including for example, small quantities of consumable products such as
> tracheostomy tubes, marketing literature, or heavier pieces of capital equipment,
> which would then be transported via company issued vehicles by the sales
> representatives for use during customer presentations, demonstrations, and
> evaluations within either acute or non-acute customer facilities. For example, the
> heavy capital equipment which is believed to have been stored in the storage unit
> may have included: Smiths Medical's Level 1 portfolio of products such as fluid
> warmers, rapid infusors, blanket warmers; Smiths Medical's Pnuepac line of
> products such as transport ventilators; Smiths Medical's BCI products such as
> capnography monitoring equipment; and potentially Smiths Medical's CADD or
> Medfusion infusion pumps.

(Smiths Medical ASD, Inc.'s First Suppl. Responses to Pls.' Interrogs. 12, Doc. No. 174-1.)

The interrogatory response and testimony provide Bard with substantial information

concerning the contents of the storage unit in 2012.  Further, the court accepts Smiths'

representation that it has no further information left to provide as to the contents of the storage

unit in 2012.  (*See* Opp'n to Mot. to Compel Rule 30(b)(6) Test. at 1, Doc. No. 199 ("Smiths

provided all the information it was able to collect through [Mr.] DeLeon and in its interrogatory

responses."); Ex. 2 to Opp'n to Mot. to Compel Rule 30(b)(6) Test., 6/23/20 Moran Email, Doc.

No. 199-2 ("Smiths has no additional information beyond Mr. De Leon's knowledge and the

information collected and already provided in Smiths' interrogatory response . . . [T]o avoid

further burdening the Court with unnecessary motions, we are writing to advise you that of the

sales representatives who covered Utah in 2012, only three currently remain with the company.

All were consulted, along with a former employee, regarding their use of and knowledge of the

27

contents of the storage unit and the minimal information recalled was included in Smiths'
interrogatory response.").

Finally, the court agrees with Smiths that Bard has not articulated a reason why any
further detail, even if such detail existed, is relevant to the venue analysis in this case.  Certainly,
the contents of the storage unit are relevant insofar as it helps to reveal the purpose for which the
storage unit was used.  However, Bard does not cite any cases or articulate any need for further
detail concerning the specific "heavy capital equipment" housed in the storage unit in 2012, or
explain how such detail would inform the venue analysis in this case.

Accordingly, the Court DENIES Bard's Motion to Compel Rule 30(b)(6) Testimony.

## CONCLUSION

For the reasons set forth above, the court (1) GRANTS IN PART and DENIES IN PART
Bard's Short Form Motion to Compel Smiths Response to Interrogatory No. 1 (Doc. No. 172);
(2) GRANTS IN PART and DENIES IN PART Bard's Short Form Motion to Compel Smiths
Response to Interrogatory No. 2 (Doc. No. 175); (3) DENIES Bard's Short Form Motion to
Compel Smiths Response to Interrogatory No. 4 and to Provide a 30(b)(6) Witness for Topic 19
(Doc. No. 176); (4) GRANTS IN PART and DENIES IN PART Bard's Short Form Motion to
Compel Smiths Response to Interrogatory No. 5 (Doc. No. 177); and (5) DENIES Bard's Short
Form Motion to Compel Rule 30(b)(6) Testimony (Doc. No. 190).

The court ORDERS Smiths to supplement its responses to Interrogatory Nos. 1, 2 and 5,
as outlined above, within fourteen (14) days of the date of this order.

DATED this 20th day of July, 2020.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge

28